UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
AMBER INTERNATIONAL NAVIGATION,
INC.,

                               Plaintiff,

      -against-

REPINTER INTERNATIONAL SHIPPING
COMPANY, S.A. and MIACHART, LLC,

                             Defendants.
------------------------------------------------------------ x

09 Civ. 3897 (GEL)

**OPINION AND ORDER**

Kevin J. Lennon and Anne C. LeVasseur, Lennon, Murphy & Lennon, LLC, New York, NY, for plaintiff Amber International Navigation, Inc.

GERARD E. LYNCH, District Judge.:

      On April 17, 2009, plaintiff Amber Navigation, Inc. initiated the above-captioned action for maritime attachment against defendants Repinter International Shipping Company, S.A. ("Repinter") and Miachart, LLC. On April 28, 2009, this Court entered an ex parte Order directing the Clerk of the Court to issue a process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure ("Rule B") against the property of defendant Repinter. The Court, however, refused to extend the order of attachment to defendant Miachart, explaining that "no attachment may issue against Miachart because it can be found within this District by virtue of its registration with the New York Department of State." Order of April 28, 2009, at 2, citing STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd., 560 F.3d 127, 133 (2d Cir. 2009) (per curiam).

Plaintiff now moves for reconsideration of the Order as it pertains to Miachart, contending that "the Court appears to have overlooked the fact that although Miachart registered to do business with the New York Department of State, it did not designate an agent for service of process within this District." (P. Mem. 3.) Plaintiff is wrong. In declining to extend the attachment to Miachart, the Court was well aware that Miachart does not have a registered agent to accept service of process in this district, but rather relies on the Secretary of State, located in Albany (which is, of course, not situated within the Southern District of New York, but in the neighboring Northern District of New York), to accept service on its behalf. Nevertheless, plaintiff was correct to seek a more detailed explanation of the ruling, for, as it correctly points out, STX Panocean, to which this Court cited, does not compel the result achieved. As it turns out, the case law critical to determining whether Miachart is found within this district for purposes of Rule B is in a state of disarray in this Circuit. Although this Court continues to believe Miachart is sufficiently present within this District to defeat a Rule B attachment against it, it is not necessary to definitively resolve that issue, for even if Miachart were not found in this District, attachment against it would nevertheless be inappropriate. Accordingly, for the reasons that follow, plaintiff's motion for reconsideration will be granted, but on reconsideration, the application for an order of attachment to issue against Miachart will once again be denied.

## DISCUSSION

### I. The "Not Found Within the District" Requirement

Maritime attachments are currently governed by Rule B, which provides, in relevant part:

> In an in personam action[,] [i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible

>or intangible personal property – up to the amount sued for – in the hands of the garnishees named in the process.

Maritime attachments serve a dual purpose: first, to "obtain jurisdiction of the [defendant] in personam through its property," and, second, only as an adjunct to obtaining jurisdiction, to secure any eventual judgment in plaintiff's favor. Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963) ("security cannot be obtained except as an adjunct to obtaining jurisdiction"); accord, STX Panocean, 560 F.3d at 130. Accordingly, a Rule B attachment is available – pursuant to the express terms of the Rule – only if the defendant "is not found within the district."

The phrase "not found within the district," however, is not defined by the Rule. See Rule B Advisory Committee's notes to the 1966 adoption ("The rules have never defined the clause, "if the defendant shall not be found within the district," and no definition is attempted here. The subject seems one best left for the time being to development on a case by case basis."). In the absence of a definition, the Second Circuit has developed a two-pronged inquiry, called "the Seawind Test." See Seawind, 320 F.2d 580. The Seawind Test looks first to "whether [d]efendant[] can be found within the district in terms of jurisdiction, and second, if so, whether [it] can be found for service of process." STX Panocean, 560 F.3d at 131, quoting Seawind, 320 F.3d at 582.[1] An order of attachment should not issue against a defendant that is found in the district in both senses.

---

[1] Several other circuits have developed analogous tests. See Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 12 Federal Practice & Procedure § 3211 at n.7 and accompanying text (2009) (hereinafter "12 FPP § 3211").

3

STX Panocean purported to "hold that a defendant's registration under New York Business Corporation Law § 1304 is sufficient to satisfy both prongs of the Seawind Test and therefore, a company registered with the Department of State is 'found' for purposes of Rule B." Id. at 133; see also id. at 130 ("[W]e find that registration under the statute is sufficient – defendants who have registered with the Department of State pursuant to § 1304 may be 'found' within the district for purposes of Rule B analysis."). However broad this language, STX Panocean's analysis was in fact limited to the jurisdictional prong, all parties having agreed that defendants satisfied the service of process prong by designation of an agent to receive process within the relevant district. Id. at 131. STX Panocean thus did not authoritatively address the question pertinent here – namely, whether a defendant that is registered to do business in the state (and thus jurisdictionally present throughout the entire state), but that can only be served in Albany, is still "found" within this district. See id.[2]

The service of process prong has received substantially less attention in the case law than the jurisdictional prong, and the limited treatment it has received has been to mixed result. The cases can be divided into pre- and post-1966, when the maritime rules were substantially revamped and unified with the Federal Rules of Civil Procedure. The reason for the disparity is unclear, however, as at all times, "the requirements for the initial attachment" under the pre-1966 "versions of Admiralty Rule 2 and their successor, modern Rule B" are identical, at least in regard to the requirement that defendant not be "found within the district." Aqua Stoli, 460 F.3d

---

[2] As a result, plaintiff's effort to use STX Panocean to compel its desired result is unavailing. STX Panocean did not set any minimum requirements for the service of process prong; it simply did not address that question.

4

at 441 & n.3.[3]

In any event, in the late 1950s and early 1960s, several cases within this Circuit interpreting the older Admiralty Rule 2 inclined towards the view that a defendant's amenability to service of process anywhere in the state where the district court sits satisfied the second prong of the Seawind Test. This result was achieved through the combined force of the purpose of

---

[3] As explained in Aqua Stoli, "[t]he first uniform federal rules for admiralty and maritime proceedings ('Admiralty Rules') were promulgated by the Supreme Court in 1844, and a revised version was released in 1920." 460 F.3d at 438. The 1920 and 1844 versions of Rule 2 were the "direct predecessors" of the modern Rule B. Id. at 441 n.3. The 1844 version of the Rule stated, in relevant part:

> In suits in personam, the mesne process may be by a simple warrant of arrest of the person of the defendant in the nature of a capias, or by a warrant of arrest of the person of the defendant with a clause therein, that *if he cannot be found*, to attach his goods and chattels to the amount sued for, or if such property cannot be found, to attach his credits and effect to the amount sued for in the hands of the garnishees named therein; or, by a simple monition in the nature of a summons, to appear and answer to the suit, as the libellant shall, in his libel or information, pray for, or elect.

Id. at 441 n.3, quoting Admiralty Rules of 1844, Rule 2 (emphasis added). In 1920, the Rule was amended to read, in relevant part:

> In suits *in personam* the mesne process shall be by a simple monition in the nature of a summons to appear and answer the suit, or by a simple warrant of arrest of the person of the respondent in the nature of a capias, as the libellant may, in his libel or information pray or elect; in either case with a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel to the amount sued for, *if said respondent shall not be found within the District*.

Id., quoting Admiralty Rules of 1920, Rule 2 (emphasis added). This version of Rule 2 remained in effect until it was supplanted by Rule B in 1966. See id. at 438. Rule B has been amended several times since its implementation, at all times retaining the requirement for attachment to issue that defendant is "not found within the district." See id. at 438 & 441 n.3.

5

attachment as an aid to jurisdiction, see Seawind, 320 F.2d at 582, and the service of process rules provided by the Federal Rules of Civil Procedure, which – in contrast to the prior rule limiting service to the geographical boundaries of the district, see Robertson v. R.R. Labor Bd., 268 U.S. 619, 623 (1925) – from the time of their adoption in 1937 have permitted service of process throughout the state in which the district court sits (and in some cases, beyond the state's boundaries).[4]

The first case to consider the interplay between the Admiralty Rules' prohibition on orders of attachment issued against defendants "found" within a district and the Federal Rules of Civil Procedure's provision for statewide service of process was United States v. Cia. Naviera Cont'l S.A., 178 F. Supp. 561 (S.D.N.Y. 1959) (Weinfeld, J.). Cia Naviera noted that, in light of the expansion of the geographical area in which a district court could issue process for service, "a question may arise whether once a respondent is found within the district where an action is pending in a jurisdictional sense, it may also be found therein for process purposes if with due diligence it can be served in another district within the state as permitted by Rule 4(f)." Id. at 564 n.7. Judge Weinfeld explicitly did not opine on the issue, however, – beyond observing that "[c]ourts of admiralty have not been hesitant to overcome procedural hurdles in order to achieve

---

[4] From the inception of the Federal Rules of Civil Procedure in 1937 through 1993, Fed. R. Civ. Pro. 4(f) provided, in relevant part, that "[a]ll process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held." The Rule "was adopted with particular reference to suits against a foreign corporation having an agent to receive service of process resident in a district within the state other than that in which the suit is brought." Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 444 (1946). As of the 1993 amendments, Rule 4(k) replaced Rule 4(f), and, though the language is substantially altered, the new subdivision continues to allow service beyond the district in which the court sits. See 12 FPP § 3211 at n.9 and accompanying text.

substantial justice" – since the defendant in the case before him could, in fact, be served within the district. Id.

Several years later the question raised in Cia. Naviera was answered affirmatively by D/S A/S Flint v. Sabre Shipping Corp., 228 F. Supp. 384 (E.D.N.Y. 1964). In that case, defendant could plainly be found in the Southern District of New York, where it maintained its principal place of business, thus immunizing it from being subjected to maritime attachment here. Id. at 385. Undeterred, plaintiff went across the river to the Eastern District of New York and obtained a maritime attachment there. Id. The court was not pleased. It noted that "[p]rior to the promulgation of Rule 4(f) . . . this court held that it was permissible for a libelant to do what the libelant has done in this case," but "[n]o valid reason appears why the principle established by Rule 4(f) . . . is not equally applicable to proceedings in admiralty." Id. at 389. The court found "[n]o valid reason . . . why the process of this court in an admiralty suit should not run as far as its process in suits generally. The respondent is present in this District for jurisdictional purposes" and "is within the reach of the process of this court . . . . Had the respondent been served it would have been compelled to appear and the historical purpose of Admiralty Rule 2 would have been satisfied without this abusive attachment." Id. The court then vacated the attachment.[5]

---

[5] The attachment was also vacated for the alternative reason that defendant's bank account was with the Manhattan branch of the bank, not the Brooklyn branch, and thus the attached funds were outside the district. Id. at 389-90. This alternative reason was affirmed by the Second Circuit, sub nom Det Bergenske Dampskibsselskab v. Sabre Shipping Co., 341 F.2d 50 (2d Cir. 1965), which explicitly declined to address whether service within the Southern District would bar a maritime attachment in the Eastern District. 341 F.2d at 52. Only three months later, the Second Circuit directly addressed the issue left unaddressed by Det Bergenske in Chilean Line Inc. v. United States, 344 F.2d 757 (2d Cir. 1965), discussed immediately below.

In Chilean Line v. United States, 344 F.2d 757 (2d Cir. 1965), the Second Circuit reached the same result. Chilean Line presented the court with a domestic New York corporation with no office or place of business in the Southern District (and no indication of any agent to accept service within the district). 344 F.2d at 759. The court found that this entity was nevertheless "found" in the Southern District of New York. Id. As the respondent was a New York corporation, the jurisdictional prong of the Seawind test was easily satisfied. Id. at 760. Turning to the service of process prong, the court looked to both federal and state service of process rules. First, it found no conflict between the then-current Federal Rule of Civil Procedure 4(f) and the then-current Admiralty Rule 2. Id. at 761. At that point in time (1965), amendments to both the Federal Rules of Civil Procedure and the Admiralty Rules (which would ultimately culminate in the 1966 merger of the two sets of rules) were under consideration. Reviewing the Advisory Committee's notes on the proposed draft amendments, Chilean Line observed:

> In its preliminary draft of proposed amendments to the Rules of Civil Procedure, intended largely to effect the unification of civil and admiralty procedure, the advisory committee, commenting on the proposed retention in Admiralty Rule 2 of the language "if the defendant shall not be found within the district," notes that while the doing business test will continue to be applied on a case to case basis to determine if defendant is subject to the jurisdiction of the particular district, Rule 4(f) will enable summons to be served on the defendant throughout the state. 'Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts,' 37-39 (March, 1964). We think we may well hold that 'found within the district' in Rule 2 should today be held to encompass the situation here.

Id. As regards state service of process rules, the court noted that New York law permitted service on a New York corporation simply by service on the secretary of state. Id. Taken together, the court concluded that this out-of-district corporation was "found" within the

8

Case 1:09-cv-03897-GEL Document 7 Filed 06/30/09 Page 9 of 20

Southern District for service of process. Id. at 762.[6] Both prongs of the Seawind Test thus being satisfied, attachment was not a proper means of obtaining jurisdiction over the New York domiciliary. Id.[7]

The following year, in 1966, the new admiralty rules were implemented, and Rule 2 became the familiar Rule B.[8] As noted above, the new rule is in substance quite similar to the old. The Advisory Committee explained: Rule B "follows closely the language of Admiralty Rule 2. No change is made with respect to the property subject to attachment. No change is

---

[6] Although Chilean Line spoke in terms of whether the rules would permit the corporation to be served in the Southern District, id. at 760-61, the absence of an office or any indication of any agent to accept service within the district, in conjunction with the court's reference to the interplay between Rule 2 and Rule 4(f) and discussion of state rules permitting service on the secretary of state, make clear that the actual service contemplated would physically occur in another district of the state. Indeed, as will be seen later, this is how other cases have interpreted Chilean Line (though they have rejected the continuing validity of the result).

[7] As in D/S A/S Flint, there was an independent reason precluding attachment. In Chilean Line, plaintiff did not seek to attach the property of the New York domiciliary against which it had a maritime claim, but rather of the United States, which owed the New York corporation money. Id. at 759. As a result, independent of whether the entity was found in the district or not, governmental immunity precluded the attachment of the United States' property. Id. 762-63.

[8] As implemented in 1966, Rule B provided, in relevant part:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district.

See the version in effect in 1970 (available on HeinOnline), which reflects the version issued in 1966 (as the first revision to Rule B occurred in 1985). As noted above, supra note 3, Rule B has undergone subsequent amendments; at all times, however, it has retained the condition that defendant is "not . . . found within the district."

made in the condition that makes the remedy available." Rule B Advisory Committee's notes to the 1966 adoption.

In retaining the language "if the defendant shall not be found within the district," the Advisory Committee's notes demonstrate a clear desire to avoid the result reached in Chilean Line and D/S A/S Flint (though without referring to either case):

> A change in the context of the practice is brought about by Rule 4(f), which will enable summons to be served through the state instead of, as heretofore, only within the district.[9] The Advisory Committee considered whether the rule on attachment and garnishment should be correspondingly changed to permit those remedies only when the defendant cannot be found within the state and concluded that the remedy should not be so limited. The effect is to enlarge the class of cases in which the plaintiff may proceed by attachment or garnishment although jurisdiction of the person of the defendant may be independently obtained. This is possible at the present time where, for example, a corporate defendant has appointed an agent within the district to accept service of process but is not carrying on activities there sufficient to subject it to jurisdiction. (Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580 (2d Cir. 1963)), or where, though the foreign corporation's activities in the district are sufficient to subject it personally to the jurisdiction, there is in the district no officer on whom process can be served (United States v. Cia. Naviera Continental, S.A., 178 F. Supp. 561 (S.D.N.Y.)).[10]

---

[9] This statement is somewhat perplexing, as Rule 4(f)'s authorization of statewide service of process had long been in place by 1966. As noted above, supra note 4, statewide service of process became the rule in 1937, with the promulgation of the Federal Rules of Civil Procedure. See the version in effect in 1940 (available on HeinOnline), which reflects Rule 4 as issued (as the first revision to the Rule occurred in 1963); see also Mississippi Pub., 326 U.S. at 443-45 (upholding the validity of Rule 4(f)'s provision for statewide service of process).

[10] Presumably the Advisory Committee cited Cia. Naviera simply as an example of a case in which this situation was discussed, and not as authority for the Committee's preferred resolution, since, as noted above, that case merely raised the issue of – but expressly did not rule on – whether service in another district of the state could preclude maritime attachment.

Id. Nevertheless, while declining to adopt language expanding the prohibition on attachments to all defendants found within the state, and retaining the limitation only as to parties "not . . . found within the district," the drafters expressly declined to define the critical phrase, explaining:

> [t]he rules have never defined the clause, "if the defendant shall not be found within the district," and no definition is attempted here. The subject seems one best left for the time being to development on a case by case basis.

Id.

Following the promulgation of these new rules, courts began requiring a mechanism for service of process within the geographical confines of the district, in accordance with the Advisory Committee's apparent intention. This issue arose perhaps most prominently in Integrated Container Service, Inc. v. Starlines Container Shipping Ltd., 476 F. Supp. 119 (S.D.N.Y. 1979), written by then-District Judge Leval. The case involved, much like the case sub judice, a foreign corporation authorized to do business in New York, but with no actual business in New York or agent to be served with process in the state, other than the Secretary of State in Albany. Id. at 123. Judge Leval found it clear that defendant must be amenable to service within the geographical confines of the district to be properly found, Chilean Line and Rule 4(f) notwithstanding. Id. at 122, 124.

Judge Leval dismissed Chilean Line's discussion of where a defendant is "found" vis-à-vis Rule 4(f) as non-binding dictum – not, it seems, because of the alternative independent holding regarding governmental immunity (see note 7 above),[11] but rather, because he appears to

---

[11] Indeed, as Judge Leval instructs in his thoughtful article on dictum, such alternative lines of reasoning occupy a murky zone in which the line between holding and dictum is unclear. See Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1258 & n.23 (2006). Indeed, when there are two independent paths to a given result, it

11

have read <u>Chilean Line</u> to have been speculating on the meaning of not-yet-implemented draft rules which never came to pass:

> The Court of Appeals in <u>Chilean Line</u> . . . , reviewing the preliminary draft of the proposed amendments to the Rules of Civil Procedure, speculated in dictum that application of Federal Rule 4(f), enabling process to be served throughout the state, might be held in the future to narrow the availability of the maritime attachment.
>
> However, the drafters did not adopt such a rule in the final draft of Admiralty Rule B. The Advisory Committee's Note of 1966 to Supplemental Rule B explicitly states that the Advisory Committee's conclusion, after considering such a change in Rule B, that the maritime remedy should not be limited by the provisions of Rule 4(f). Courts in this district have since followed the drafters' intent.

476 F. Supp. at 124.

The Fifth Circuit, in <u>LaBanca v. Ostermuncher</u>, 664 F.2d 65 (5th Cir. 1980), similarly dismissed <u>Chilean Line</u>, believing that the decision "explicitly relied on various provisions in a draft proposal for unified civil and admiralty rules of procedure; these same provisions were later deleted from the rules which were adopted." <u>LaBanca</u>, 664 F.2d at 68. Accordingly, the court noted, "district courts in the Second Circuit have not followed <u>Chilean Line</u> and have reached the result we reach here." <u>Id</u>. at 68.

The rejection of the binding force of <u>Chilean Line</u> appears unfounded. Contrary to the belief articulated in <u>Integrated</u> and <u>LaBanca</u> that <u>Chilean Line</u> relied upon proposed draft rules that were never in fact adopted, <u>Chilean Line</u> was quite clear that it was interpreting the requirement of the then-current Rule 2 that the defendant be "not found within the district"

---

would seem odd to say that both are dicta (and thus, have a holding-less case), but equally odd to arbitrarily elevate one over the other.

against the then-current provision of Rule 4(f) allowing a district court to issue process anywhere within the territorial limits of the forum state, and found no conflict between the two provisions. Chilean Line, 344 F.2d at 761. The court flatly stated that "we hold that respondent can be found in the Southern District within the meaning of Rule 2 of the Supreme Court Rules of Practice in Admiralty and Maritime Cases, [and] that, accordingly, libelant cannot acquire in personam jurisdiction over respondent by a writ of foreign attachment in that District." Id. at 759.[12] To be sure, Chilean Line looked to the Advisory Committee's commentary on the draft rules as support for the result it reached, noting the Advisory Committee's recognition that "Rule 4(f) will enable summons to be served on the defendant throughout the state," but that the "doing business test will continue to be applied on a case to case basis to determine if defendant is subject to the jurisdiction of the particular district." Id. But at all times, Chilean Line was interpreting the then-existing rules, and not, as Integrated and LaBanca say, proposed rules that never came to be. See Chilean Line, 344 F.3d at 761.

Moreover, despite Integrated and LeBanca's suggestion that Chilean Line had the misfortune of relying upon a provision that was ultimately never implemented, the 1964 draft rules and commentary Chilean Line reviewed were in fact nearly identical in relevant substance to the version actually adopted. Compare Preliminary Draft of Proposed Amendments to Rules

---

[12] To be sure, a court's statement does not become a holding simply because the court uses the words "we hold" in stating a principle. The point of the quotation is not the use of the word "hold," but rather the fact that the court's statement makes clear that it is addressing the force of the then-current Rule 2, not some hypothetical future rule. The court's full discussion, 344 F.2d at 759-61, makes perfectly plain that the court found first, that the respondent was "a New York corporation and as such . . . is subject to personal jurisdiction" in New York, and second, "drawing upon federal and New York rules for service of process in actions at law, *that respondent was amenable to service in the Southern District.*" Id. at 760 (emphasis added). The court could not be clearer that it was addressing the then-current state of the law.

13

of Civil Procedure for the United States District Courts at 37-39 (March 1964), with Rule B & Advisory Committee's notes thereto (1970).[13]

Chilean Line, of course, was interpreting Admiralty Rule 2, and not the present Rule B. But the key phrase it interpreted – "not found within the district" – was carried over to the present Rule B from Rule 2. While the Advisory Committee clearly desired to require service within the district through the retention of this phrase, it is not clear that the actual rule promulgated achieves the intended result. The drafters' expressed intention would ordinarily be persuasive, but for the fact that the drafters explicitly ceded authority to define "not found within the district" to subsequent development by case law, thinking it best allow the meaning of the phrase to be developed on a "case-by-case basis." Rule B Advisory Committee's note to the 1966 adoption. The internal inconsistency undercuts the force of the drafters' proclaimed intent.

Moreover, the text of Rule B is silent as to service of process. Supplemental Rule A(2) makes the main body of the Federal Rules of Civil Procedure applicable to admiralty proceedings "except to the extent they are inconsistent with these Supplemental Rules." Just as Chilean Line and D/S A/S Flint found no inconsistency between the former Rule 4(f) and

---

[13] The rule promulgated in 1966 differs from the 1964 draft only in that it requires a complaint seeking maritime attachment to be verified and supported by an affidavit swearing that (at least on information and belief) the defendant cannot be found within the district. The accompanying commentary is identical in all regards, but for the substitution of the word "rule" for "draft." The draft Chilean Line reviewed thus included the Advisory Committee's apparent desire to preclude attachment only against defendants that could be physically served with process within the geographical boundaries of a given district – which Chilean Line appears to have either overlooked or implicitly rejected; given the prominence of the Committee's position within the commentary, the former explanation appears unlikely. But even if Chilean Line simply overlooked the commentary urging a different result, that would not change the fact that the court interpreted the phrase "not be found within the district," as it occurred in the rule as it existed at the time of the decision, which is to all practical effect the same as it reads today.

14

Admiralty Rule 2, there is no inconsistency between the ordinary rules governing service of process, provided by Rule 4, and Rule B. What's more, the rulemakers clearly knew how to impose more restrictive service rules in the admiralty domain, as they did through Supplemental Rule E(3)(a), which provides: "In admiralty and maritime proceedings process in rem or of maritime attachment and garnishment may be served only within the district." Rule E(3)(a), however, does not cover the *in personam* actions Rule B is concerned with, and no similar service limitation appears on the face of Rule B. The rule could have easily stated: "A defendant must be amenable to service of process within a district to be found in it." It did nothing remotely of the sort. Rather, the drafters apparently hoped to achieve that result by leaving it to the courts to determine the meaning of the phrase "not found within the district."[14] Apparently unbeknownst to the Advisory Committee, however, the odds were already stacked against the drafters' intent. For the phrase "not found within the district" had already been given, at least in the Second Circuit, meaning contrary to whatever the Advisory Committee may have thought it was getting in retaining the language.

Nevertheless, despite Chilean Line's apparent authority on the issue, it has been repeatedly disregarded, and indeed, although the Second Circuit has not directly spoken to the second prong of the Seawind Test since Chilean Line, it has itself backtracked from its earlier position without any meaningful consideration (or indeed, even recognition of the precedent). Aqua Stoli – albeit clearly in dictum, as the case did not concern the circumstances under which

---

[14] Accordingly, whereas LaBanca attempted to justify its result (requiring service within in the geographical confines of a district) by reference to the fact that "the Supplemental Rules expressly prevent application of Rule 4(f) to other areas of the attachment process," 664 F.2d at 68, citing Supp. Rule E(3)(a), the existence of Rule E(3)(a) in fact seems to lend more support to a broader conception of what it means to be "found" in a district.

15

a party may be found within a district – implicitly endorsed Judge Leval's rejection of Chilean Line, citing Integrated for its explanation of the "not found within the district" requirement. 460 F.3d at 445 n.4. Noting that attachments are "quite easily obtained," Aqua Stoli quoted approvingly Integrated's interpretation of the requirement that

> [a]ttachment is precluded under Admiralty Rule B(1) only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise *in personam* jurisdiction over the defendants . . . *and* in addition can be found within the geographical confines of the district for service of process.

460 F.3d at 443, quoting Integrated, 476 F. Supp. at 122; see also, Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) (without reference to Integrated but endorsing the same result – again in dictum – by quoting from Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, 20 J. of Maritime L & Commerce, No 4 (October 1989) at 521.) Relying on Integrated and Aqua Stoli's endorsement of it, Judge Scheindlin recently denied a motion to vacate an attachment against a corporation in precisely the same situation as Miachart. Stolt Tankers B.V. v. George Ethanol, LLC, 591 F. Supp. 2d 612, 617-19 (S.D.N.Y. 2008). So too, Wright & Miller instruct that "unless the defendant can be served within the district in which the court sits, the attachment will lie even though service can be effected in another district in the state," and note that Chilean Line "seems unsound and has not been followed." 12 FPP § 3211 at n. 11 and accompanying text.

As it currently stands, then, the issue of what is required to be "found" within the district is at best unclear. Despite the weighty authority of Judge Leval, and the casual – and unequivocally non-binding – endorsement of his view in Aqua Stoli and Winter Storm, it appears to this Court that Chilean Line's ruling stands as a never-overruled, binding holding of

16

the Second Circuit.

Moreover, despite the apparent modern consensus to the contrary, the reasoning of Chilean Line and D/S A/S Flint appears sound to this Court, the Advisory Committee's expressed intention notwithstanding. As explained in STX Panocean, "Rule B gives potential defendants the choice between subjecting themselves to the jurisdiction of the courts of the district in question, or making themselves vulnerable to the possibility that their property in the district will be attached." STX Panocean, 560 F.3d at 130. Defendant Miachart, through its registration with the State of New York, has unequivocally chosen the latter. This Court sees no just reason why plaintiff should be able to attach Miachart's property in this district when it has the full ability to sue Miachart here. See Seawind, 320 F.2d at 582 ("security cannot be obtained except as an adjunct to obtaining jurisdiction"); accord, STX Panocean, 560 F.3d at 130. That Miachart may be served with process in Albany rather than in this district does nothing to change the result.

## II.     The Convenient Adjacent Jurisdiction Exception

It is not necessary, however, to reach a definitive conclusion as to whether Miachart is found within the district, because even if Miachart were not, the issuance of an order of attachment against it would nevertheless be inappropriate. Even cases narrowly interpreting the found requirement leave open the possibility that if that interpretation "creates an artificial distinction between multi-district and single-district states or presents a possibility for abusive use of the maritime remedy . . . , the courts may easily remedy the situation by exercising discretion to set aside an unfair attachment." Integrated, 476 F. Supp. at 124. The example Integrated gives of such a situation is "where an attachment is obtained unfairly in one district

where a proper lawsuit could be commenced in another district without unfairness or inconvenience." Id., citing D/S A/S Flint, 228 F. Supp. 384.

Picking up on Integrated's recognition of the inequity in "the use of the exceptional remedy of maritime attachment when normal civil proceedings [are] readily available," Aqua Stoli, 460 F.3d at 442, citing Integrated, 476 F. Supp. at 124, the Second Circuit in Aqua Stoli endorsed the equitable power of a district court to vacate an attachment that technically complied with Rule B where "the defendant is subject to suit in a convenient adjacent jurisdiction." Id. at 445. This "convenient adjacent jurisdiction" exception is "narrowly circumscribed" and applies only "if the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought." Id. at 444.[15]

After STX Panocean, there can be no question that, through its registration to do business pursuant to New York's Business Corporation Law § 1304 and amenability to service of process via service upon the Secretary of State in Albany, Miachart can be found, for purposes of Rule B, within the Northern District of New York. 560 F.3d at 133. It is similarly clear that the Northern District of New York is a "convenient adjacent jurisdiction" to the Southern District of New York. Several courts in this district have found the test for convenience to be based on geographic proximity. Swiss Marine Servs. S.A. v. Louis Dreyfus Energy Servs., 598 F. Supp. 2d 414, 418, 421 (S.D.N.Y. 2008) (noting that "abuse is not the dispositive factor" but rather the focus is on "geographic considerations" and finding Connecticut to be a convenient adjacent

---

[15] This rationale should seemingly apply equally, if not more forcefully, where the defendant is subjected to an *in personam* lawsuit in the very district in which plaintiff seeks attachment – which, of course, is the precise situation presented here. But such conjecture leads back to the proper interpretation of "not found within the district," and for these purposes, Michart's amenability to an ordinary civil proceedings in this district will be put aside.

18

jurisdiction); see also Cantone & Co. Inc. v. Seafrigo, No. 07 Civ. 6602, 2009 WL 210682, at *6 (S.D.N.Y. Jan. 27, 2009) (concurring with Swiss Marine's analysis of "convenience" and finding New Jersey to be a convenient adjacent jurisdiction).  See also Emerald Equip. Leasing, Inc. v. Sea Star Line, LLC, No. 08 Civ. 10672, 2009 WL 1182575, at *2 (S.D.N.Y. May 1, 2009) (finding New Jersey to be a convenient adjacent jurisdiction); Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V., 543 F. Supp. 2d 338, 340 (S.D.N.Y. 2008) (same).

In fashioning this exception, Aqua Stoli itself noted that "[a]n 'across the river' case, where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated." 460 F.3d at 444.  Here, there is not even a river separating the district where plaintiff seeks attachment (Southern District) and where defendant can be found (Northern District), and it is plain that the Northern District of New York is a convenient jurisdiction adjacent to this one. Accordingly, were the attachment to issue, it could promptly be vacated on equitable grounds.

Although the issuance of an order of attachment is generally thought of as mandatory upon the satisfaction of Rule B's liberal criteria, with the necessary procedural safeguards embodied in Rule E's mechanism for a defendant to challenge an attachment once issued, see Aqua Stoli, 460 F.3d at 438; see also Rule B, there are nevertheless circumstances in which it seems clear that this standard protocol should not be followed.  In Emerald Equip., Judge Koeltl declined to issue an attachment because of the existence of grounds for equitable vacatur – in that case, both a convenient adjacent forum (Connecticut), and defendant's amenability to suit in the district in which plaintiff was incorporated (Delaware).  2009 WL 1182575, at *5-6.  Judge Koeltl rejected the "empty formalism" of issuing an attachment that would subsequently be

vacated, where the defendant had already appeared and was contesting the issuance of the attachment in the first instance. Id. at *5.

Similarly here, although defendants have yet to appear, it would be equally inappropriate to issue an attachment against Miachart, where it is apparent on the face of plaintiff's application for the ex parte order that Miachart can be found in a convenient adjacent jurisdiction. It would amount to an injustice on the system to allow a party to take advantage of this ex parte process to obtain an attachment that is doomed from the outset, and require Miachart to come into court to take action when it is already apparent what the ultimate result will be. "To issue the attachment and force the defendant to delay making its arguments until a post-attachment hearing would turn the hearing into a protective measure for the plaintiff, a purpose for which it was not intended." Id. at *6.

## CONCLUSION

Accordingly, plaintiff's motion for reconsideration is granted, but on reconsideration plaintiff's motion for the issuance of an ex parte order of maritime attachment against Miachart is again denied. Miachart is likely sufficiently present in this district to defeat a Rule B attachment against it. However, even if Miachart were not found here, its unequivocal presence in the Northern District of New York – a convenient adjacent district to this one – makes the issuance of an ex parte order of maritime attachment against it manifestly inappropriate.

SO ORDERED.

Dated: New York, New York
       June 29, 2009

GERARD E. LYNCH
United States District Judge